**Victor Manuel MUNIZ SOUFFRONT, Plaintiff,**

v.

**Zoe Laboy ALVARADO, et al., Defendants.**

**No. Civ. 99–1616 JAF.**

United States District Court, D. Puerto Rico.

Sept. 14, 2000.

---

Jose R. Olmo–Rodriguez, Christopher A. Jenkins, San Juan, PR, for plaintiff.

Federal Litigation Division, Department of Justice, Commonwealth of Puerto Rico, San Juan, PR, for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Víctor Manuel Muñíz Souffront ("Souffront") filed this suit pursuant to 42 U.S.C. § 1983 (1988) against Defendants, Zoé Laboy–Alvarado ("Laboy"), Administrator of the Correctional Services of Puerto Rico; Carmen Feliciano de Melecio ("Feliciano"), Secretary of Puerto Rico's Department of Health ("DOH"); Dr. Manuel Jiménez Espinoza ("Jiménez"), Director of Out–Patient Services at the Guerrero Correctional Complex ("GCC") in Aguadilla, Puerto Rico; Dr. Pedro Luis Bidot de Jesús ("Bidot"), a doctor for the DOH; and Frank Soto Peraza ("Soto"), a correctional officer at GCC, among others, alleging denial of medical care in violation of the Fifth, Eighth, and Fourteenth Amendments, U.S. CONST. amends. V, VIII, XIV, and local medical malpractice laws. Plaintiff seeks compensatory and punitive damages.

Defendants Laboy, Jiménez, Soto, and Feliciano (collectively "Defendants") move to dismiss.

## I.

### Relevant Factual Background

Onor about October 17, 1998, Plaintiff, while an inmate at GCC, allegedly reported to prison officials that he was suffering from abdominal pain, fever, and nausea. Dr. Jiménez allegedly saw Plaintiff in the GCC infirmary and ordered that a sonogram be taken of him at Pedro Zamora Hospital. Although the sonogram was performed, Plaintiff asserts that no one discussed its results with him.

Approximately three days later, Plaintiff's condition allegedly deteriorated, requiring that he visit GCC's medical facilities again. Plaintiff contends that during this second visit, he told Dr. Bidot that he had been ill for three days and that he was currently experiencing severe abdominal pain, high fever, nausea, vomiting, loss of appetite, constipation, and an inability to urinate. Plaintiff asserts that Dr. Bidot did not examine him, but, nonetheless, diagnosed gastroenteritis and prescribed a somniferous intravenous drug. Plaintiff maintains that the drug did not relieve his symptoms, which worsened over the next three days.

Plaintiff further contends that on October 23, 1998, he suffered from excruciating pain throughout the day. Despite repeated attempts by him and other inmates to inform the prison guards, including Defendant Soto, of his condition, Plaintiff did not receive any medical attention until 9:30 p.m. At that time, he was taken by wheelchair to GCC's medical unit, where Dr. Jiménez attended to him. Dr. Jiménez then referred Plaintiff to Pedro Zamora Hospital, where Dr. Carlos Torres Salichs

performed surgery on him. According to Plaintiff, Dr. Torres informed him after his surgery that he had suffered from acute peritonitis, a necrotic appendix, and swollen organs. Due to the severity of his condition, Dr. Torres operated on Plaintiff again on or about November 1, 1998, to complete cleaning the infected area. Plaintiff remained in the hospital for eleven days.

After his return to GCC, Plaintiff allegedly did not receive the post-operative care prescribed by Dr. Torres, including medication, special diet, wound maintenance, and follow-up visits to Dr. Torres. Plaintiff contends that he complained about the lack of treatment that he was receiving to prison officials and his social worker. Nonetheless, he asserts that through December 20, 1998, GCC's personnel continued to ignore his requests for appropriate medical attention.

Defendants move to dismiss Plaintiff's complaint arguing that his claims are time barred; Plaintiff has failed to state a claim upon which relief may be granted; qualified immunity protects them; statutory immunity disallows suits against physicians; and that this court should not exercise supplemental jurisdiction over the state law claims. Plaintiff opposes the motion.

## II.

### Motion to Dismiss Standard

Under Rule 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for "failure to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992). We then determine whether plaintiffs have stated a claim under which relief can be granted.

## III.

### Statute of Limitations

Defendants first argue that Plaintiff's section 1983 action against them for alleged violations of his constitutional rights is time-barred. Defendants contend that Plaintiff's cause of action accrued either on October 23, 1998, the date that Plaintiff was admitted to the hospital for surgery, or on November 1, 1998, the date of Dr. Torres' second operation on Plaintiff. Since, according to Defendants, Plaintiff filed his complaint 411 days after he "found out of the injury," they claim that his action is time-barred. *See Docket Document No. 10.*

■ To determine the applicable statute of limitations for this action, we first turn to section 1983 to determine its provisions. Section 1983, however, lacks an accompanying federal statute of limitations. *See* 42 U.S.C. § 1983. Consequently, we adopt relevant provisions from the analogous statute of limitations of the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 266–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (directing federal courts in section 1983 actions to borrow and apply a state's statute of limitations for personal injuries). For section 1983, the most appropriate provision is the statute of limitations for personal injury cases. *See Owens v. Okure*, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (stating that courts, when evaluating the timeliness of a section 1983 claim, "should borrow the state statute of limitations for personal injury actions") (citation omitted). In Puerto Rico, a one-year statute of limitations governs section 1983 actions. *See* 31 L.P.R.A. § 5298(2) (1991); *Rivera–Ramos v. Roman*, 156 F.3d 276, 282 (1st Cir.1998); *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 41–43 (1st Cir.1990).

■ "Although the limitations period is determined by state law, the date of accrual is a federal law question." *Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997); *see also Rivera–Ramos*, 156

F.3d at 282 ("For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law.") (citation omitted). The one-year statute of limitations "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury." *Benitez–Pons v. Commonwealth of P.R.*, 136 F.3d 54, 59 (1st Cir.1998) (citation omitted).

■ In this case, Defendants' statute-of-limitations argument lacks merit. If we assume the earliest accrual period for Plaintiff's action forwarded by Defendants, or October 23, 1998, we find that Plaintiff's complaint, having been filed on June 4, 1999, is well within the one-year limitations period. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."); *cf. Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon & Gasoline Co.*, 347 F.2d 921, 922 (8th Cir.1965) (holding that commencement of federal antitrust action alone suffices to toll statute of limitations).

## IV.

### *Standard For Liability Under Section 1983*

■ Section 1983 of Title 42 of the United States Code provides a substantive cause of action for damages and injunctive relief against individuals and governmental bodies who have deprived a person of the rights, privileges or immunities secured by the United States Constitution and federal laws.[1] In order to establish liability under section 1983, a plaintiff must first show that "[t]he conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled sub nom. on other*

grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985). Second, a plaintiff must show that the defendants' conduct in fact deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt*, 451 U.S. at 535, 101 S.Ct. 1908; *Gutierrez–Rodriguez*, 882 F.2d at 559; *Voutour*, 761 F.2d at 819. Third, a plaintiff must show that the defendants' conduct caused this deprivation. *See Voutour*, 761 F.2d at 819. A plaintiff must establish for each co-defendant that his or her own act or omission deprived the victim of protected rights. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)); *Gutierrez–Rodriguez*, 882 F.2d at 562; *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989). Additionally, the defendants' conduct or inaction must have been intentional, *see Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutierrez–Rodriguez*, 882 F.2d at 562. Thus, a plaintiff must plead that each defendant acted to deprive him of a legally cognizable right under federal law.

## V.

### *Failure to State a Claim*

Plaintiff alleges that Defendants violated his constitutional rights when then withheld timely and adequate medical treatment for his abdominal ailment, causing him severe pain and suffering as the condition worsened.

---

1. Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.
 42 U.S.C. § 1983.

Defendants respond that Plaintiff's complaint does not allege that they acted with the requisite deliberate indifference—to constitute an Eighth Amendment violation. Specifically, Defendants contend that Plaintiff admits that he visited a physician three times in the course of six days, received medical attention in GCC's infirmary, and twice received medical treatment in a non-prison hospital. They also allege that Plaintiff continued to receive medical treatment for his abdominal ailment until he voluntarily terminated it. Moreover, although Defendants concede that Plaintiff experienced isolated instances of neglect by prison officials, they assert that non-convicted individuals often wait longer in hospital emergency rooms to be attended and that individual instances of neglect do not suffice to constitute deliberate indifference.

Similarly, Defendants maintain that Plaintiff's complaint fails to allege facts sufficient to support the conclusion that Defendants Laboy and Feliciano were personally involved in the alleged violations of his constitutional rights. They contend that Defendants Laboy and Feliciano, as supervisory officials, were not made aware of any special internal abdominal danger that Plaintiff may have faced. Thus, Defendants conclude that alleged administrative negligence by Defendants Laboy and Feliciano could not have risen to the level of deliberate indifference or reckless disregard for Plaintiff's safety.[2]

Relatedly, Defendants contend that the lack of diagnosis and inadequate medical treatment alleged by Plaintiff fail to establish a valid claim of medical mistreatment under the Eighth Amendment. Thus, they conclude that this court lacks subject-matter jurisdiction over Plaintiff's claims against them.

■ The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. For an inmate to prove that the withdrawal of health care by prison officials and doctors amounted to cruel and unusual punishment, he must demonstrate defendants acted with deliberate indifference to a "serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference is conduct that offends evolving standards of decency in a civilized society." *DesRosiers v. Moran,* 949 F.2d 15, 18 (1st Cir.1991) (citing *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and *Estelle,* 429 U.S. at 102–03, 97 S.Ct. 285).

■ Furthermore, the deliberate indifference standard has both an objective and subjective component. *See id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The objective prong asks whether the deprivation was sufficiently serious, whereas the subjective prong inquires whether a wanton disregard of the inmate's rights motivated the deprivation. *See id.* A medical need is serious if it causes extreme pain, results in death or degeneration, *see Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (citation omitted), or is "obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995). A plaintiff can prove the subjective element of a prison official's or doctor's deliberate indifference by showing that they were aware of an excessive risk to the plaintiff's health or safety, or that the risk was obvious, and that they failed to act despite the awareness. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Determining the wantonness of a defendant's conduct depends not upon its effects on the inmate, but rather on the practical constraints facing prison officials and doctors.

---

**2.** Defendants also summarily contest what they perceive to be Plaintiff's allegations of section 1983 liability for Defendants Laboy and Feliciano premised on respondeat superi- or. Plaintiff refutes this contention. After reviewing the pleadings, we find no respondeat superior allegations in Plaintiff's complaint and, thus, see no reason to discuss it further.

*See Davidson v. Flynn,* 32 F.3d 27, 30 n. 2 (2d Cir.1994); *DesRosiers,* 949 F.2d at 19 (citation omitted).

Similarly, in evaluating the quality of medical care in an institutional setting such as a prison, the First Circuit has held that:

> [I]nadvertent failures to provide medical care if negligent, do not sink to the level of deliberate indifference. In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. The requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care. While this mental state can aptly be described as "recklessness," it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.

*DesRosiers,* 949 F.2d at 19 (internal citations omitted). Additionally, medical malpractice alone, or disagreements between an inmate and his medical provider over the course of treatment or its adequacy, generally do not rise to the level of an Eighth Amendment violation. *See Estelle,* 429 U.S. at 106, 97 S.Ct. 285; *Watson v. Caton,* 984 F.2d 537, 540 (1st Cir.1993); *Layne v. Vinzant,* 657 F.2d 468, 474 (1st Cir.1981).

■ In this case, we find that Plaintiff has asserted a valid claim against Defendants. In his first amended complaint, Plaintiff clearly states that he writhed in excruciating pain for approximately three days. *See Docket Document No. 3.* He also alleges that Defendant Jiménez knew of Plaintiff's condition from attending to him in GCC's infirmary and that Plaintiff informed Defendant Soto of the same debilitating abdominal ailment. *See id.* Additionally, Plaintiff alleges that other inmates recognized the pain which he was suffering and contacted other prison officials to alert them to the urgency of Plaintiff's condition. *See id.* Despite this

knowledge, Plaintiff continues, Defendant Jiménez failed to follow up on Plaintiff's sonogram and condition, and Defendant Soto waited three hours before taking Plaintiff to the infirmary. *See id.* Thus, accepting Plaintiff's alleged facts as true, we find that with regard to Defendants Jiménez and Soto, Plaintiff has met both prongs of the deliberate indifference standard. *See, e.g., Estelle,* 429 U.S. at 104, 97 S.Ct. 285 (holding that delaying access to medical care can constitute deliberate indifference); *Sealock v. Colorado,* 218 F.3d 1205, 1207 (10th Cir.2000) (finding that objective element of deliberate indifference standard established by inmate's showing that he suffered pain for several hours before receiving treatment); *Hunt v. Uphoff,* 199 F.3d 1220, 1223 (10th Cir.1999) (finding failure to follow-up on inmate's serious medical condition suffices to constitute deliberate indifference); *Consolo v. George,* 58 F.3d 791, 794 (1st Cir.1995).

■ Concerning Defendants Laboy's and Feliciano's supervisory liability, a defendant can be found liable if he "formulates a policy or engages in a practice that leads to a civil rights violation committed by another." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6–7 (1st Cir.1998); *see also Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997). While an important factor in determining supervisory responsibility is whether the supervisor had notice of behavior that was likely to result in a violation of constitutional rights, actual knowledge of the offending behavior is not required. *See Camilo–Robles,* 151 F.3d at 7; *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 93 (1st Cir.1994).

■ We find that Plaintiff has sufficiently asserted a section 1983 claim against Defendants Laboy and Feliciano. Plaintiff alleges that Defendant Laboy, as Administrator of Correctional Services of Puerto Rico, formulated policies and failed to execute other policies which resulted in the inadequate provision of medical attention to him. *See Docket Document No. 3.* Plaintiff also asserts that Defendant Laboy

was aware of deficiencies in the prison system which increased the risk of inmates to receiving substandard medical treatment. *See id.* Moreover, Plaintiff avers that Defendant Feliciano knew or should have known that Dr. Bidot, the employee under her supervision who attended Plaintiff at the GCC infirmary, was improperly trained. *See id.* The failure of both Defendants, Plaintiff alleges, to correct these practices and problems led to the violations of his constitutional rights. *See id.*

Given these allegations, we find that Plaintiff has met the pleading requirements for supervisory liability. *See Camilo-Robles,* 151 F.3d at 6–7; *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (holding that a supervisor is liable if he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury;" or because of his "own culpable action or inaction in the training, supervision, or control of his subordinates"); *see also Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994) (citing *Larez,* 946 F.2d at 646).

We also find that Defendants' subject-matter jurisdiction argument is without merit, since Plaintiff is asserting more than a medical malpractice claim in his complaint and has alleged sufficient facts to present a valid claim under the Eighth Amendment.

# VI.

### *Statutory Immunity for Physicians*

 Defendants Jiménez and Feliciano contend that Puerto Rico law protects them from civil liability in this case. According to Defendants Jiménez and Feliciano, 26 L.P.R.A. § 4105 (1997) shields physicians from civil liability for medical malpractice suits if the alleged malpractice occurred while in the performance of their duties as employees of the Commonwealth or its instrumentalities.[3] Since they are doctors working for instrumentalities of the Commonwealth and the alleged malpractice allegedly occurred in the course of this practice, Defendants Jiménez and Feliciano maintain that they are immune from Plaintiff's section 1983 suit.

Plaintiff disagrees with Defendants. He asserts that state law cannot prevent him from presenting his section 1983 claims for alleged violations of the U.S. Constitution. He also argues that 26 L.P.R.A. § 4105 does not provide immunity to Defendants Jiménez and Feliciano because they allegedly failed to perform their required duties.

We concur with Plaintiff's first refutation. The supremacy of federal law over conflicting state law is axiomatic, particularly when violations of the United States Constitution are alleged. *See* U.S. CONST. art. VI, cl. 2;[4] *see also, e.g., Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ("[P]re-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.") (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). Thus, 26 L.P.R.A. § 4105, by purportedly prohibiting Plaintiff's claim under 42

---

3. The statute provides, in relevant part:

> No health service professional may be included as a defendant in a civil suit for damages due to malpractice caused in the performance of his profession while said health service professional acts in compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities.

26 L.P.R.A. § 4105.

4. Article VI provides, in relevant part:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2.

U.S.C. § 1983, cannot shield Defendants Jiménez and Feliciano from liability.

## VII.

### Qualified Immunity

Penultimately, Defendants assert that they are entitled to qualified immunity for actions taken in their individual capacities. Essentially, Defendants argue that because they acted in good faith and within the scope of their duties, their conduct was reasonable and thus protected from suit.

■ Qualified immunity is an affirmative defense shielding public officials from civil damages so long as their conduct does not violate any clearly-established statutory or constitutional right of which a reasonable person would be aware. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 704 (1st Cir.1993) (stating that the doctrine of qualified immunity "shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known"). The doctrine consists of two analytical prongs. First, the court must determine as a matter of law whether the constitutional right in question was clearly established at the time of the alleged violation. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Martinez–Rodriguez v. Colon–Pizarro*, 54 F.3d 980, 988 (1st Cir.1995); *St. Hilaire v. Laconia*, 71 F.3d 20, 24 (1st Cir.1995). Second, the court must decide whether a reasonable, similarly situated official would understand that the challenged conduct violated the established constitutional right. *See Anderson v. Creighton*, 483 U.S. 635, 638–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Frazier v. Bailey*, 957 F.2d 920, 929 (1st Cir.1992).

■ With regard to a supervisor's liability, a state official may be held liable under section 1983 in either his official or personal capacity for the behavior of his subordinates if: (1) the behavior of the subordinates results in a constitutional violation; and (2) the official's action was affirmatively linked to that behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence" or "gross negligence amounting to deliberate indifference." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Lipsett v. University of P.R.*, 864 F.2d 881, 902 (1st Cir.1988).

Since applying these standards requires a substantial factual base, we find that it is premature at this time to decide the issue of qualified immunity. *See e.g., Camilo–Robles*, 151 F.3d at 6–7 (holding that for a supervisor to be found liable, he must have formulated a policy or engaged in a practice that led to a violation by subordinate); *Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir.1992) (requiring actual knowledge or at least willful blindness for determining notice to supervisor).

## VIII.

### Supplemental Jurisdiction

Lastly, Defendants contend that since Plaintiff's claims under section 1983 should be dismissed, the court should also dismiss his state law claims for lack of supplemental jurisdiction. We find this point to be moot. We have found that Plaintiff has asserted a valid section 1983 claim against Defendants for alleged violations of his constitutional rights. Accordingly, we exercise supplemental jurisdiction over his related state law claims. *See* 28 U.S.C. § 1367(a) (1993) (authorizing exercise of supplemental jurisdiction over state claims if they are "so related ... [to federal question] that they form part of the same case or controversy ...").

## IX.

### Conclusion

In accordance with the foregoing, we **DENY** Defendants' motion to dismiss, *Docket Document No. 10.*

**IT IS SO ORDERED.**