**Efrain RAMOS BONILLA, Plaintiff,**

v.

**Pierre E. VIVONI, et al., Defendants**

No. 02–2002(JP).

United States District Court,
D. Puerto Rico.

April 23, 2003.

Francisco R. González–Colón, San Juan, PR, for Plaintiff.

Félix M. Román Carrasquillo, San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Before the Court is a "Motion to Dismiss and Brief in Support Thereof" filed by co-Defendants Pierre Vivoni and Carlos Haddock Román, in their personal capacity, Josean Moreno, in his personal and official capacity, and Miguel Pereira, in his official capacity (docket No. 21); Plaintiffs' opposition thereto (docket No. 29), and Defendants' "Statement of Uncontested Material Facts" (docket No. 35).

Plaintiff in this case is Efraín Ramos Bonilla, a member of the New Progressive Party ("NPP"). Defendants are former Puerto Rico Police Superintendent Pierre Vivoni, former Puerto Rico Police Superintendent Miguel Pereira, Puerto Rico Police Colonel Carlos Haddock, and Puerto Rico

Police Officer Josean Moreno. Plaintiff claims that while at a protest at the "Lomita de los Vientos"[1] in front of the Capitol, Police Chief Vivoni, Colonel Haddock and the police officers were "clearly favoring" the leftist groups present there. He alleges he was beaten and arrested by Officer Moreno for no reason, and later was charged with inciting a riot, a charge he alleges was fabricated, all because of his political affiliation with the NPP. He further alleges that the police officers at the scene were anti-American, and that they violated his First Amendment rights of free speech and free association, as well as his Fourth and Fourteenth Amendment rights.

Defendants moved for dismissal of the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff failed to state a claim upon which relief could be granted. However, Plaintiff filed documents with his Complaint, as well as a videotape of the news coverage afforded to the incident in question. The Court wished to consider them in its analysis of the motion, and therefore ordered the parties to convert their motions to motions for summary judgment in conformity with Local Rule 311.15 (docket No. 32). When the Court ordered the parties to convert their motions, it specifically gave them due dates to file them. Defendants complied with the Court's Order, and filed their statement of uncontested facts. Plaintiff, however, did not file a counter statement of contested material facts in accordance with the Local Rule, nor did he request an extension of time to file the same. The Court therefore considers Defendants' statement of uncontested material facts as unopposed.

---

1. The Lomita de los Vientos is a piece of property located in front of the Puerto Rico Legislature (the Capitol building), that has been the site of several protests since it was leased to a private religious entity that built a chapel on it protesting the United States Naval maneuvers on the Island of Vieques, located off the coast of Puerto Rico.

## II. STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be entered against a party where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of *material* fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248; *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179 (1st Cir. 1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2511; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The moving party bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-moving party, who may not rest upon mere allegations or denials of the pleadings, but who must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *Goldman,* 985 F.2d at 1116 (1st Cir.1993); *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1610, 20 L.Ed.2d 569 (1968). In meeting its burden, the non-moving party must produce enough evidence to show that it is entitled to a trial, not that it will necessarily be successful at trial. *Casas Office Machines, Inc. v. Mita Copystar America, Inc., et al.,* 42 F.3d 668, 686 (1st Cir.1994) (*citing First Nat'l Bank of Arizona,* 391 U.S. at 288–89, 88 S.Ct. 1575, 1591–92, 20 L.Ed.2d 569 (1968)). It is with this standard in mind that the Court analyzes the motion before it.

## III. FINDINGS OF FACT

The Court lists the uncontested facts as agreed to by the parties at the Initial Scheduling Conference.

1. Efraín Ramos Bonilla is of legal age, 48 years old, American citizen, unmarried, retired, resident of Calle Castilla 1265, Caparra Terrace, San Juan, Puerto Rico 00920; Tel. (787)783–7546, and (787)593–4669, Social Security No. 583–68–7389, driver's license number 992794.

2. Co–Defendant Pierre Vivoni was personally directing the police force at "La Lomita de los Vientos" on June 28, 2001, the day the incident in question took place.

3. During that morning, Plaintiff Efraín Ramos Bonilla went to La Lomita de los Vientos, where several pro-American university students were raising American Flags in front of the Puerto Rico Legislature.

4. Pierre Vivoni arrived around 12:00 noon, and Colonel Carlos Haddock was also there, trying to prevent any outburst of violence.

5. Co–Defendant Miguel Pereira was not Superintendent of the Puerto Rico Police Department at the time the events that gave rise to this cause of action occurred.

6. At La Lomita de los Vientos, several anti-U.S. Navy and anti-American groups had a permanent protest against everything that is American in Puerto Rico.

7. Plaintiff Ramos Bonilla went to La Lomita de los Vientos, and with about 20 or so other pro-Americans, walked to the top of the hill to protect the flag that had been raised by Omar Negrón.

8. About 10:30 in the morning, Colonel Haddock approached Plaintiff and angrily told him "You have to come down now because both groups agreed to leave".

9. Around 3:00 p.m., there were about 500 pro-Americans.

10. Colonel Carlos Haddock then escorted a group of persons that were not supporting the pro-Americans to the chapel.

11. At that moment, Plaintiff Ramos Bonilla was hit in the back.

12. The police officers threw him on the ground and handcuffed him.

13. When Plaintiff was taken to the police cruiser, he asked why he was being arrested.

14. At the Police Headquarters at Puerta de Tierra, Plaintiff Ramos Bonilla was incarcerated.

15. Plaintiff Ramos Bonilla was never told why he was arrested.

16. After a thirty minute detention at the police station Plaintiff was released, and he returned to La Lomita de los Vientos on the very day of the incident in question.

17. On Friday, August 4, 2001, Plaintiff Bonilla appeared before the Commonwealth of Puerto Rico court.

The following uncontested facts were derived from Defendants' statement of un-contested material facts in light of this Court's Order (docket No. 35).

1. At the time of the alleged facts averred in the Complaint, Defendant Miguel Pereira was not the Superintendent of the Puerto Rico Police Department.

2. Miguel Pereira commenced his duties well after the incidents alleged in the Complaint, and succeeded co-Defendant Vivoni as Superintendent of the Puerto Rico Police Department on December 1, 2001.

3. On January 2, 2001, co-Defendant Pierre Vivoni del Valle commenced his duties as Superintendent of the Puerto Rico Police Department.

4. Co–Defendants Vivoni and Miguel Pereira were not personally or directly involved in causing the alleged violations of Plaintiff's rights.

5. Co–Defendants Vivoni and Haddock helped maintain order during the manifestation.

6. Plaintiff's actions resulted in his temporary removal from the area.

7. Before the incident, Plaintiff had been diagnosed and/or suffered from a chronic emotional condition for which he was receiving full disability compensation from the Department of Veteran's Affairs.

8. Plaintiff was also diagnosed with a schizophrenic disorder.

9. The video presented by Plaintiff shows that the police present at La Lomita de los Vientos controlled the crowd.

## IV. CONCLUSIONS OF LAW

As a preliminary matter, the Court addresses the issue of having disposed of Defendants' Motion for Summary Judgment without an opposition to Defendants' statement of uncontested facts. In the

case of *D. Smith v. Alumax Extrusions, Inc.*, 868 F.2d 1469 (5th Cir.1989), appellants advanced the argument that vacating the grant of summary judgment under Rule 59(e) was appropriate because the court had entered summary judgment without an opposition to the actual motion itself, and thus without all the proper and necessary evidentiary materials. Appellants alleged this led the court to make erroneous factual findings and legal conclusions. Although this argument has not explicitly been raised, the Court nevertheless addresses this issue because of its relevance to the present scenario.

In the case at bar, Defendants' motion to dismiss was actually opposed by Plaintiff. However, the Court converted Defendants' motion to dismiss into one for summary judgment. Under Local Rule 311.15, when the moving party files a statement of uncontested material facts, the non-moving party is obligated to file a counterstatement of contested facts which he believes raises issues of material fact. The purpose of these two statements is to guide the Court in its determination of whether or not material facts exist that would preclude the Court from granting summary judgment. Furthermore, the standard of review for Summary Judgment is significantly different than that for a Motion to Dismiss. In summary judgment, a plaintiff must bring more to the table than mere allegations; he must bring for the specific facts, with specific citations to the record to prove the veracity of those facts. *See Goldman,* 985 F.2d at 1116. Therefore, in this particular instance, Plaintiff's failure to file a counter-statement of contested material facts acts like there was no opposition filed to Defendants' motion for summary judgment, and the Court deems Defendant's uncontested facts as true. *See Fed.R.Civ.P. 56(e); A.M. Capen's Co., Inc. v. American Trading and Prod. Corp.,* 202 F.3d 469 (1st Cir.2000) (District

court properly admitted uncontested facts submitted by plaintiff when defendant failed to comply with local rules and oppose plaintiff's summary judgment motion in appropriate form.)

It is true that when a Court rules on a Motion for Summary Judgment without the benefit of an opposition, the Court risks accepting a skewed version of the factual circumstances giving rise to the controversy. However, it is also clear that this risk is minimized by certain procedural safeguards. For example, even though a party failing to oppose a motion for summary judgment waives the right to controvert any facts asserted by the moving party, as in this instance, this does not mean that the Court must automatically grant the Motion for Summary Judgment pending before it. *Jaroma v. Massey,* 873 F.2d 17, 21 (1st Cir.1989).

Rule 56(e) of the Federal Rules of Civil Procedure is clear when it states that summary judgment shall only be entered "if appropriate." Fed.R.Civ.P. 56(e). Consequently, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 929 (1st Cir.1983) (*quoting Thornton v. Evans,* 692 F.2d 1064, 1075 (7th Cir.1982)). Put another way, even when ruling on an unopposed motion for summary judgment, the Court must peruse the record with a very critical eye and determine whether the moving party has met its burden of demonstrating undisputed facts that will entitle it to judgment as a matter of law. *Corretjer Farinacci v. Picayo,* 149 F.R.D. 435 (D.Puerto Rico 1993). Only when the Court properly discharges this duty does it activate the procedural safeguards which reduce the risk that the Court's legal con-

clusions will rest on unsound factual foundations. With this in mind, the Court now turns to the issues before it.

### A. *Eleventh Amendment Immunity*

The Court turns first and foremost to the Eleventh Amendment [2] issue, since the same goes to whether the district court has jurisdiction over Defendants in their official capacity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Under the Eleventh Amendment, all states are immune from suits by citizens in federal court, unless the state waives said immunity or Congress overrides it as it may do in limited situations. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) and *Seminole Tribe v. Florida,* 517 U.S. 44, 57–68, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). When an action is brought against a public agency or institution that is not the state, the analysis must focus on whether the agency "is to be treated as an arm of the state partaking of the state's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend". *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). If, after this analysis, the agency or department that is the named defendant is deemed an arm of the state, then the action will be barred by the Eleventh Amendment. This jurisdictional bar applies irrespective of the nature of the relief sought in the complaint. *See Pennhurst,* 465 U.S. at 100, 104 S.Ct. 900.

■ In terms of the Commonwealth of Puerto Rico, it has been clearly established that, for Eleventh Amendment purposes, the Commonwealth is treated as if it were a state; consequently, the Eleventh Amendment bars any suit brought against it. *Metcalf & Eddy. Inc., v. Puerto Rico Aqueduct and Sewer Auth.,* 991 F.2d 935 (1st Cir.1993); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 697 (1st Cir. 1983).

The main thrust of the Eleventh Amendment is to minimize federal courts' involvement in disbursal of state monies. The Supreme Court has stated that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit". *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *see also Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (recognizing "that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain"). It has been established that if a state has a legal obligation to satisfy judgments against an institution out of public coffers, the institution is protected from federal adjudication by the Eleventh Amendment. *See Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Reyes v. Supervisor of DEA,* 834 F.2d 1093, 1097–98 (1st Cir.1987).

However, in terms of suits against an employee in his or her official capacity, as in the case at bar, it has been well estab-

---

**2.** The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. amend. XI.

lished that an official capacity suit against an officer is treated as a suit against the governmental entity of which the officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114(1985); *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) ("a judgment against a public servant 'in his official capacity imposes liability on the entity that he represents....' "). Therefore, it is clear that a suit against an employee in his official capacity cannot lead to liability against the governmental entity.

In terms of the Puerto Rico Police Department, it has been clearly established that it is an arm of the state, and therefore, immune from suit under the Eleventh Amendment. *See Febus–Rodríguez v. Betancourt–Lebrón,* 14 F.3d 87 (1st Cir. 1994); *Reyes v. Supervisor of Drug Enforcement Admin.,* 834 F.2d 1093, 1097–98 (1st Cir.1987) *López Rosario v. Police Dept.,* 126 F.Supp.2d 167 (D.Puerto Rico 2000) (Pieras, J.); *Torres v. United States,* 24 F.Supp.2d 181 (D.Puerto Rico 1998); *Suárez Cestero v. Pagán Rosa,* 996 F.Supp. 133, 142–43 (D.Puerto Rico 1998) (Pieras, J.). Therefore, a suit against any of the defendants herein, in their official capacities, cannot lie, and consequently, all claims against all Defendants, in their official capacities, are hereby **DISMISSED WITH PREJUDICE**.

### B. *Plaintiff's claims against Miguel Pereira*

Plaintiff agrees with Defendants' argument that former Police Superintendent Miguel Pereira is not responsible in his personal capacity, since he was not Police Superintendent at the time the events that gave rise to this cause of action occurred.

Plaintiff only sued Mr. Pereira because he was Police Superintendent at the time Plaintiff filed this Complaint. Plaintiff only sued him in his official capacity for injunctive and equitable relief. However, as of this writing, Mr. Pereira is no longer Superintendent of the Puerto Rico Police Department, and therefore, the Court also **DISMISSES** his claims **WITH PREJUDICE**.

### C. *Supervisory liability for Superintendent Pierre Vivoni and Colonel Carlos Haddock*

A supervisor may be found liable under 42 U.S.C. § 1983 only on the basis of *his or her own actions or omissions.* *See Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997) (emphasis added); *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996); *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989). In other words, it is insufficient to establish supervisory liability by merely establishing the existence of an employment relationship between a supervisor and a subordinate. *See Canton,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). To sustain a cause of action based on a theory of supervisory liability, a plaintiff must establish that "(1) the behavior of [the supervisor's] subordinates results in a constitutional violation and (2) the supervisor's action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence of the supervisor amounting to deliberate indifference.' " *Hegarty v. Somerset County,* 53 F.3d 1367, 1379–80 (1st Cir.1995) (quoting *Lipsett,* 864 F.2d at 902–03) (internal brackets and ellipses omitted); *see also Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989).

To demonstrate deliberate indifference, a plaintiff must show "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998), *cert. denied,* 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999). The "affirmative link" requirement necessitates proof that the supervisor's conduct "led inexorably to the constitutional violation." *Hegarty,* 53 F.3d at 1380 (*citing Febus–Rodríguez v. Betancourt-Lebrón,* 14 F.3d 87, 92 (1st Cir. 1994)).

■ The First Circuit has observed that an important consideration in determining the existence of supervisory liability is whether a supervisor "was put on notice of behavior which was likely to result in the violation of . . . constitutional rights." *Camilo–Robles,* 151 F.3d at 7 (*quoting Febus–Rodríguez,* 14 F.3d at 93). Supervisory liability, however, does not require a showing that the supervisor had actual knowledge of the offending behavior. *See id.; see also Muñiz Souffront v. Alvarado,* 115 F.Supp.2d 237, 243 (D.Puerto Rico 2000). Rather, a supervisor may be held liable if he "formulates a policy or engages in a practice that leads to a civil rights violation committed by another." *Camilo–Robles,* 151 F.3d at 6–7; *see also Seekamp,* 109 F.3d at 808. Thus, even lacking actual knowledge of censurable conduct, a supervisor "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." *Maldonado–Denis v. Castillo-Rodríguez,* 23 F.3d 576, 582 (1st Cir.1994) (*citing Miranda v. Muñoz,* 770 F.2d 255, 260 (1st Cir.1985)); *see also Dimarzo v. Cahill,* 575 F.2d 15, 17–18 (1st Cir.), *cert. denied,*

439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978).

■ Plaintiff specifically alleges that Vivoni, the former Police Superintendent, and Colonel Carlos Haddock did not implement a sound policy within the Police Department and the officers to prevent civil rights violations to pro-American citizens, and that they and the other police officers showed clear and manifest favoritism toward "leftists" on the day in question. He further alleges that co-Defendants Vivoni and Haddock established the Police Departments' public policy, which carried out an unconstitutional and politically-motivated usage and custom, and did nothing to cease this unlawful practice. *See Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989) ("Supervisors need not have personal knowledge of the alleged violation, however, if they were indirectly responsible for or could have prevented the challenged act."); *Muñoz Souffront,* 115 F.Supp.2d at 243–44. Plaintiff ultimately bears the burden of establishing, however, that Vivoni and Haddock: established such an unconstitutional policy and carried it out; personally discriminated against him; or displayed deliberate indifference, measured by whether it "would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Hegarty,* 53 F.3d at 1380; *Febus–Rodríguez,* 14 F.3d at 92.

The basis of Plaintiff's opposition to Defendants' Motion to Dismiss is basically the same legal argument he set forth in his Complaint, but adding that Defendants were "personally and directly involved." However, the standard of review for Summary Judgment is significantly different than that for a Motion to Dismiss. As previously stated, Plaintiff must bring more to the table than a mere allegation; he must set forth specific facts, accompanied with specific citations to specific docu-

ments to prove the veracity of those facts. *See Goldman,* 985 F.2d at 1116. However, Plaintiff failed to file with the Court a counter-statement of contested material facts, as required under Local Rule 311.15 for a proper opposition to a motion for summary judgment.

After engaging in a careful analysis without the benefit of Plaintiff's counter-statement of contested facts, the Court finds that Plaintiff has failed to demonstrate Defendants' alleged policy favoring civil rights violations to pro-American citizens, and the Police Department's "clear and manifest favor toward 'leftists'". At this point, Plaintiff's *allegations* are all that sustain his cause of action. Moreover, Plaintiff has not shown the existence of an illicit custom that was so widespread as to constitute the force of law. He merely points to one incident where he was arrested. Such an isolated episode, without more, is insufficient to substantiate the existence of a widespread custom violative of § 1983. *See Gold v. City of Miami,* 151 F.3d 1346, 1352 (11th Cir.1998).

Further, the Court finds that Plaintiff has failed to bring even a scintilla of evidence that Co–Defendants Vivoni or Haddock displayed deliberate indifference to the alleged constitutional violations. Instead, Plaintiff expects the Court to allow him to bring in Vivoni and Haddock as co-Defendants simply because one of the officers under their charge may have violated Plaintiff's rights. Plaintiff has not connected any act or omission of Vivoni or Haddock to the complained-of conduct, the affirmative link necessary in this case.

The mere fact that Superintendent Vivoni and Colonel Haddock were present the day of the incident, by itself, is not enough to provide the thread that would allow this Court to find supervisory liability. *See Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979); *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 706 (11th Cir.1985)

(sheriff could not be held liable unless the plaintiff established that the sheriff was involved personally in acts depriving the inmate of his constitutional rights, that he breached a duty imposed by state law and this breach caused the plaintiff's injury, or that he had established a policy or custom that violated his rights); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981) (Summary judgment was appropriate for police chief whose officers were accused of police brutality because the police chief was not personally involved). The mere fact that these two officials were present at the site of the incident does not automatically demonstrate, as Plaintiff suggests, that they were "personally involved".

Furthermore, even if the Court were to look at the incident that is the basis for this case, the Court finds that there were some one thousand people at the scene at one time, and *Plaintiff was the only person arrested.* Looking closely at the video that Plaintiff himself filed, the Court finds it is evident that no overt discrimination occurred against any of the other "pro-Americans" at the site. The officers at the scene merely contained and controlled the crowd.

The Court can find no evidence of a custom of discrimination against pro-American citizens in the case at bar, or that these two police official overtly and personally acted to deprive Plaintiff of his constitutional rights. Therefore, the Court finds that Plaintiff has failed to prove supervisory liability. For this reason, the Court hereby **DISMISSES WITH PREJUDICE** any claims of supervisory liability against Pierre Vivoni and Carlos Haddock in their personal capacity.

### D. *Liability for Defendant Moreno in his personal capacity*

Plaintiff also brings forth a claim under 42 U.S.C. § 1983 against Officer Moreno,

contending that his civil rights were violated on the day in question because of the "present Police Department's many instances of political discrimination, and its officers' general negative attitude and conduct towards Pro–American citizens of other political ideologies". He states that it was "foreseeable and predictable" that the illegal measures implemented by the Police Department would cause Plaintiff harm. He alleges discrimination on the basis of his political affiliation, persecution, and arrest based on false accusations.

In order to prosper in a claim under Section 1983, a Plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States, (2) that the perpetrator of the violation was acting under color of law, and (3) a causal link between the action complained of and defendant's actions. *See, e.g., Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991) (*citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)); *Cruz– Erazo v. Rivera–Montañez,* 212 F.3d 617 (1st Cir.2000)

It has been well established that assertions about statements of political affiliation—unaccompanied by any specific factual information to support the claim—are patently insufficient to establish an act of political discrimination. *See, e.g., Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 8 (1st Cir.2000) (affirming summary judgment for defendants where the only evidence offered by plaintiffs was a sworn statement that a defendant "voiced his intention" to rid the workplace of employees with plaintiffs' political affiliation); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (stating, "we have consistently required plaintiffs to outline facts sufficient to convey specific instances of unlawful discrimination") (emphasis added); and *López–Carrasquillo v. Rubianes,* 230 F.3d 409 (1st Cir.2000).

■ The Court finds that Plaintiff fails in the first hurdle of this analysis, as he has not provided the Court with any information substantiating his allegations of discriminatory intent. There is not one iota of evidence that demonstrates that the Defendants or the "entire" Puerto Rico Police Department favored non-statehood supporters. For that matter, as previously discussed, Plaintiff has not provided the Court with any evidence that the Puerto Rico Police Department has established a policy or custom that discriminates along political lines. There is not a single affidavit, deposition or otherwise, to support Plaintiff's bold assertions. Plaintiff has merely voiced many accusations while not providing any evidence in support thereof. *See Woods–Leber v. Hyatt Hotels of Puerto Rico, Inc.,* 124 F.3d 47, 50 (1st Cir.1997) ("The non-movant must identify properly substantiated facts sufficient to establish a trial-worthy issue"). Plaintiff must point to evidence in the record that would "permit a rational fact-finder" to conclude that the challenged action "occurred and stemmed from a politically based discriminatory animus". *Padilla–Garcia v. Guillermo Rodríguez,* 212 F.3d 69, 74 (1st Cir. 2000). It is evident to the Court that he has not done so.

Plaintiff *was the only person that was arrested* during the whole incident. Had more NPP supporters been arrested, the Court's analysis might be different. However, one arrest in one thousand people does not show discrimination, especially when Plaintiff has failed to show the Court evidence of discriminatory animus.

The Court finds that the allegations set forth by Plaintiff are insufficient to create a cause of action under Section 1983. Simply put, he has failed to show violation of his First Amendment rights. Therefore, the Court **DISMISSES WITH PREJUDICE** Plaintiff's First Amendment claims

under Section 1983 against Defendant Moreno.

As a final matter, the Court wishes to address Plaintiff's allegations of violations to his Fourth Amendment rights. While this case might have been more properly presented as a police brutality case, Plaintiff's failure to file a counter-statement of contested material facts has effectively killed any chance that these allegations might have had to prosper. As it is, Plaintiff's Complaint is so vague and confusing that it is difficult to pinpoint with any accuracy his claims. Without any specific citations to the record, Plaintiff's allegations of police brutality are just that—allegations—that are standing on thin air without any evidentiary support whatsoever, and which cannot be considered "facts" for purposes of summary judgment under any circumstances. *See Anderson,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2515; *see also Triangle Trading Co., Inc. v. Robroy Inds., Inc.,* 200 F.3d 1 (1st Cir.1999) (conclusory allegations, improbable inferences, and unsupported speculation are insufficient to establish a genuine dispute of fact). Therefore, the Court **SHALL NOT** consider Plaintiff's conclusory allegations, and hereby **DISMISSES** Plaintiff's Fourth Amendment claims, **WITHOUT PREJUDICE**.

### E.  *Liability under Ex–Parte Young*

The Court next addresses the *Ex Parte Young* fiction, which permits an official capacity defendant to be sued for injunctive relief. Under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which is an exception to state sovereign immunity, a plaintiff may enforce a claim of federal right by obtaining injunctive or declaratory relief against a state officer in the officer's official capacity; such a plaintiff may obtain prospective, but not retro-spective, injunctive relief. *Greenless v. Almond,* 277 F.3d 601 (1st Cir.2002).

Plaintiff requests that Defendants be ordered to refrain from "political attacks, persecutions, discrimination, harassment arrests against Pro–Americans, because absent such an order, other Pro–Americans in Puerto Rico under similar circumstances, would suffer extraordinary and irreparable damages", all because of the "policy and practices of the Police Department." However, the Court finds that Plaintiff has not proven any First Amendment violations, as previously discussed. The Court cannot find that overt discrimination occurred by the Puerto Rico Police Department, or that there was a policy or custom to that effect, or that the officers present on the day in question deliberately discriminated against Plaintiff solely because of his political affiliation. The video shows that Plaintiff was taken away from the scene in order to avoid any serious altercations with protesters, which the Court **NOTES** were minimal in such a high tension atmosphere. Therefore, the Court finds it cannot grant Plaintiff's petition for injunctive relief, and consequently, no cause of action can ensue under *Ex Parte Young.* The Court therefore **DISMISSES** Plaintiff's claims for injunctive relief, **WITH PREJUDICE**.

### F.  *Qualified Immunity*

As a final matter, Defendants allege that they are protected by the doctrine of qualified immunity. The doctrine of qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Hoffman v. Reali,* 973 F.2d 980, 985 (1st Cir. 1992).

Since the Court has already disposed of this case on other grounds, it does not reach the qualified immunity analysis. However, even if the Court were to analyze the facts of this case in order to determine whether qualified immunity applied, it would find that this case so closely mirrors the Supreme Court's analysis for qualified immunity in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that qualified immunity would most likely be granted in this instance.

## V. CONCLUSION

For the aforementioned reasons, and having found no genuine issue of material fact exists that would preclude the granting of Summary Judgment, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiff's causes of action under the First Amendment, **DISMISSES** Plaintiff's causes of action under the Fourth Amendment **WITHOUT PREJUDICE**, and does not reach the issue of qualified immunity. As no claims have been filed under supplemental jurisdiction, the Court does not address this issue.

**IT IS SO ORDERED, ADJUDGED AND DECREED.**