# United States Court of Appeals

## For the First Circuit

No. 01-2286

THE DESTEK GROUP, INC.,
d/b/a The Destek Networking Group,

Plaintiff, Appellant,

v.

STATE OF NEW HAMPSHIRE PUBLIC UTILITIES COMMISSION;

DOUGLAS L. PATCH, Chairman, PUC Commission;
NANCY BROCKWAY, PUC Commissioner;
SUSAN S. GEIGER, PUC Commissioner;
VERIZON NEW ENGLAND, INC.,
d/b/a Verizon New Hampshire,

Defendants, Appellees.

_____

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY,
d/b/a Bell Atlantic-New Hampshire,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul Barbadoro, U.S. District Judge]

Before

Lynch, Circuit Judge,

Campbell and Magill,* Senior Circuit Judges.

*Of the Eighth Circuit, sitting by designation.

Eugene F. Sullivan, III, with whom Ingersoll & Sullivan, P.A. was on brief, for appellant.

Sean A. Lev, with whom Gregory M. Kennan and Thomas J. Donovan were on brief, for appellee Verizon New England.

Daniel J. Mullen, Associate Attorney, with whom Philip T. McLaughlin, Attorney General, was on brief, for appellee State of New Hampshire Public Utilities Commission, et al.

January 28, 2003

**MAGILL**, <u>**Senior Circuit Judge**</u>.  This case concerns the subject matter jurisdiction of federal district courts pursuant to § 252(e)(6) of the Telecommunications Act of 1996 (the "Telecommunications Act" or "Act"), 47 U.S.C. § 252(e)(6) (2000), and the scope of immunity of a state commission and state commissioners from suit under 42 U.S.C. § 1983 (2000).  In October 1999, The Destek Group, Inc. ("Destek"), Plaintiff-Appellant, initiated this action in the district court against the State of New Hampshire, Public Utilities Commission (the "State Commission"), Members of the Commission (the "Commissioners"),[1] and Verizon New England, Inc. ("Verizon"),[2] Defendants-Appellees.  Destek sought judicial review pursuant to § 252(e)(6) of the Act, as well as injunctive relief and damages from the State Commission, the Commissioners, and Verizon pursuant to § 1983 for violations of the Telecommunications Act and the Due Process Clause of the Fourteenth Amendment.  Ultimately, the district court granted summary judgment for the State Commission, the Commissioners, and Verizon on all claims, save the § 1983 claim for prospective injunctive relief against the Commissioners.  The district court denied Destek's summary judgment motion.  Destek stipulated to

---

[1]The members of the Commission are Douglas Patch, Susan S. Geiger, and Nancy Brockway.

[2]The company we refer to as Verizon throughout this opinion was known as New England Telephone and Telegraph Company and did business as Bell Atlantic-New Hampshire prior to August 1, 2000.

dismissal with prejudice of the § 1983 claim for prospective injunctive relief in order to proceed with this appeal.

## I.

On March 16, 1999, Verizon executed an agreement (the "Agreement") with the University of New Hampshire in which Verizon contracted to provide asynchronous transfer mode ("ATM")[3] cell relay service to the University of New Hampshire within the State of New Hampshire at a uniform statewide rate of $655.75 per interface[4] per month, provided the University of New Hampshire purchase at least thirty interfaces. On June 4, 1999, Verizon submitted a petition with the State Commission seeking approval of the Agreement as a special contract pursuant to N.H. Rev. Stat.

---

[3]ATM is

[a] network architecture that divides messages into fixed-size units (called cells) of small size (53 bytes) and that establishes a switched connection between the originating and receiving stations. . . . The advantage of breaking all transmissions into small-sized cells is that the network can transmit voice, audio, and computer data over a single line without any single type of data dominating the transmission. ATM's connection-oriented design differs from the Internet's connectionless design; unlike the Internet, ATM enables service providers to bill by network usage and is capable of very high transmission speeds.

B. Pfaffenberger, Webster's New World Computer Dictionary 30 (9th ed. 2001).

[4]An interface, generally, is "the connection between two hardware devices, between two applications, or between different sections of a computer network." Pfaffenberger, supra note 3, at 196.

Ann. § 378:18 (2002).[5]  Verizon claimed that the Agreement would enable the University of New Hampshire to provide "distance learning"[6] services to New Hampshire school students and libraries, as well as high speed internet access.[7]

On June 25, 1999, Destek[8] sought to intervene in the State Commission proceedings and opposed the approval of the Agreement.  Destek maintained, inter alia, that special contracts pursuant to N.H. Rev. Stat. Ann. § 378:18, such as the Agreement at issue, are discriminatory and minimize competition.  Additionally,

---

[5]Section 378:18, entitled "Special Contracts for Service," provides

> Nothing herein shall prevent a public utility from making a contract for service at rates other than those fixed by its schedules of general application, if special circumstances exist which render such departure from the general schedules just and consistent with the public interest and, except as provided in [N.H. Rev. Stat. Ann. §] 378:18-b, the commission shall by order allow such contract to take effect.

N.H. Rev. Stat. Ann. § 378:18.  Section 378:18-b provides that special contracts for telephone utilities shall become effective thirty days after filing provided certain rate conditions are met. Id. § 378:18-b.

[6]Distance learning is "[t]he use of telecommunications (and, increasingly the Internet) to provide educational outreach programs for students at remote locations."  Pfaffenberger, supra note 3, at 118.

[7]Concurrently, Verizon sought to keep certain cost data relevant to the Agreement confidential by filing a motion for a protective order, which the State Commission granted on October 4, 1999.

[8]Destek provides telecommunications services throughout New Hampshire and New England.

Destek noted that the University of New Hampshire had not filed with the State Commission to become a telecommunications reseller or competitive local exchange carrier ("CLEC").[9]

By an order dated July 7, 1999, the State Commission approved the proposed special contract, subject to two conditions: (1) the State Commission required that Verizon file a tariff, within ninety days, making ATM services available statewide with the same terms, conditions, and at the same prices as in the Agreement; and (2) the State Commission required that Verizon resubmit the Agreement to the State Commission disclosing more details regarding the ATM circuits.[10] Noting the special circumstances of this Agreement, the State Commission opined that the public interest strongly favored quick approval of the contract because any delay could deny school children the benefits of ATM services.

---

[9]A CLEC "is a local exchange carrier [("LEC")] that now is permitted (thanks to the U.S. 1996 Telecommunications Act) to compete in local telephone markets with the incumbent local exchange carrier [("ILEC")], the company that possessed a monopoly in that market prior to the passage of the 1996 reforms." Pfaffenberger, supra note 3, at 75.

An LEC is "[a] public telephone company that provides local services." Id. at 218.

[10]Subsequently, Verizon complied with these conditions.

Destek sought reconsideration of the State Commission's order,[11] arguing that approval of the Agreement violated, inter alia, (1) the Telecommunications Act, and (2) the Due Process Clause of the Fourteenth Amendment. Specifically, Destek argued that (1) Congress intended the Act to promote competition and thus, special contracts, as defined by N. H. Rev. Stat. § 378:18, are preempted by the Act because they stifle competition; and (2) to the extent that special contracts are not preempted, the State Commission's approval of this special contract violates § 251(b) and § 253(a) of the Act. In an order dated November 22, 1999, the State Commission denied Destek's motion for reconsideration.

On October 18, 1999, Destek filed suit in the U.S. District Court for the District of New Hampshire. Destek's amended complaint sought declaratory relief, injunctive relief, and damages, raising three specific claims. First, Destek asserted a right to judicial review under § 252(e)(6) of the Telecommunications Act, claiming that the Agreement was an interconnection agreement[12] and discriminatory and contrary to the

---

[11]In addition, the New Hampshire Office of the Consumer Advocate and Vitts Networks, Inc., filed motions for reconsideration of the State Commission's order. These motions were denied by the State Commission.

[12]An interconnection agreement is a contract between an ILEC and a telecommunications carrier linking their two networks together for mutual exchange consistent with the duties set out in 47 U.S.C. § 251. Section 252 describes, inter alia, the procedures by which the parties may reach an interconnection agreement (either by negotiation or arbitration) and the procedures for State

public interest. Second, Destek sought injunctive relief and damages from the State Commission, the Commissioners, and Verizon, pursuant to 42 U.S.C. § 1983, for alleged violations of Destek's rights under the Act, citing the State Commission's approval of the Agreement without considering the federal standards for approval of interconnection agreements. Third, Destek sought injunctive relief and damages, pursuant to 42 U.S.C. § 1983, against the State Commission and the Commissioners for alleged violations of Destek's rights under the Due Process Clause of the Fourteenth Amendment by repeated denials of Destek's requests for a hearing.

All parties sought summary judgment based on the agency record developed before the State Commission. The district court (1) granted Verizon's motion for summary judgment in its entirety, (2) granted partial summary judgment for the State Commission and the Commissioners, and (3) denied Destek's motion for summary judgment. First, the district court found that Destek could not proceed under § 252(e)(6) of the Act because the State Commission had not made a "determination" under that section, a prerequisite for federal district court review. Second, the district court held that Destek's failure to demonstrate that Verizon's conduct was fairly attributable to the State precluded Destek from asserting § 1983 claims against Verizon, a private actor. Third, the district

---

commission approval or rejection of the agreement. 47 U.S.C. § 252.

court held that the State Commission and Commissioners in their official capacities were immune from suit under § 1983. Fourth, the district court found that Destek's claims for damages against the Commissioners in their individual capacities were barred by the doctrine of "quasi-judicial" immunity. Finally, the district court denied both the Commissioners' and Destek's motions for summary judgment with respect to Destek's § 1983 claim for prospective injunctive relief, finding a potentially viable claim for seeking to compel the Commissioners to comply with the Telecommunications Act, depending on the resolution of genuine issues of material fact as to whether the Agreement was subject to the Act.

In order to allow this appeal to proceed to this court, Destek stipulated to the dismissal with prejudice of claims not resolved against it by the district court's summary judgment decision, including the § 1983 claim for prospective injunctive relief. On September 28, 2001, the district court entered final judgment based on the stipulation. This appeal follows.

## II.

Destek raises four main arguments on appeal: the district court erred in concluding that (1) the State Commission had not made a § 252 "determination"; (2) Verizon was not liable under § 1983; (3) the State Commission and Commissioners acting in their official capacity were immune from the § 1983 claims; and (4) the Commissioners were immune from the § 1983 claim in their individual

-9-

capacities.  We disagree with Destek and for the reasons discussed below affirm the judgment of the district court.

We review the district court's grant of summary judgment de novo.  R.I. Depositors Econ. Prot. Corp. v. Hayes, 64 F.3d 22, 25 (1st Cir. 1995).  Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  We review the record in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in that party's favor.  Hayes, 64 F.3d at 25.  "[W]e are 'mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" P.R. Tel. Co. v. Telecomms. Regulatory Bd., 189 F.3d 1, 7 (1st Cir. 1999) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  In addition, we recognize that a party seeking immunity bears the burden of showing that immunity is justified. Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 784 n.15 (1st Cir. 1990).

**A.**

First, Destek argues that the district court erred in holding that Destek lacked subject matter jurisdiction because the State Commission had not made a § 252 "determination."  We disagree and affirm the district court's dismissal.  Ultimately, the State Commission never made a determination for the purposes of §

-10-

252(e)(6) and Destek never raised this issue before the State Commission.

A principal purpose of the Telecommunications Act is to increase competition in the market for local telephone services. See Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, 56; P.R. Tel. Co., 189 F.3d at 7. The statute imposes obligations on companies that control the existing telecommunications network in the local area, known as ILECs. See 47 U.S.C. § 251; P.R. Tel. Co., 189 F.3d at 7. Verizon is an ILEC.

Section 252 of the Act provides a comprehensive framework within which competitor telecommunications carriers, seeking to enter the local market, may negotiate interconnection agreements (linking the two networks for mutual exchange of traffic) with ILECs. 47 U.S.C. § 252.[13] Under § 252(e)(1), if the telecommunications carrier and the ILEC agree on the terms for the interconnection, the parties must submit their interconnection agreement to the relevant state regulatory commission for review. Id. § 252(e)(1). The state commission must then either approve or disapprove the voluntarily negotiated interconnection agreement within ninety days; otherwise the agreement is deemed approved. Id. § 252(e)(4).

---

[13]If the parties are unable to voluntarily negotiate an interconnection agreement, § 252 provides for compulsory arbitration. 47 U.S.C. § 252(b).

-11-

Section 252(e)(2)(A) provides, in relevant part, that the state commission may only reject a proposed interconnection agreement adopted by voluntary negotiation if

> (i) the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement; or (ii) the implementation of such agreement or portion is not consistent with the public interest, convenience, and necessity . . . .

Id. § 252(e)(2)(A).

Finally, § 252(e)(6) allows any party aggrieved by the state commission's determination under § 252 to seek judicial review, in a federal district court, of the determination for compliance with §§ 251 and 252. Id. § 252(e)(6). Under § 252, the only "determination" that can be made by a state commission in the case of a voluntarily negotiated interconnection agreement is the determination of whether to approve or reject it. See id. § 252.

A fundamental principle of the structure of our democracy is that federal courts are courts of limited jurisdiction. E.g., Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978); U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 499 (1st Cir. 2000). The power of lower federal courts is limited to jurisdiction authorized by the Constitution and expressly conferred by Congress. Id.

In this case, Destek sought review of the State Commission's actions under § 252(e)(6) of the Act. Section 252(e)(6) provides, in relevant part,

-12-

> [i]n any case in which a State commission <u>makes a determination</u> under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

47 U.S.C. § 252(e)(6) (emphasis added). Thus, in order for a federal district court to have jurisdiction under this section, Congress required (1) a determination by the state commission under § 252, approving or rejecting an interconnection agreement; and (2) a party aggrieved by that determination. Clearly, the dispositive jurisdictional inquiry under § 252(e)(6) is whether there was a "determination" for the purposes of that section. We will assume, without deciding, for the purpose of this inquiry, that the Agreement is an interconnection agreement.

Verizon and the University of New Hampshire sought approval of their Agreement as a special contract, pursuant to N.H. Rev. Stat. Ann. § 378:18. Upon motion to intervene, Destek argued that such contracts were discriminatory and anticompetitive, never mentioning the Telecommunications Act. The State Commission conditionally approved the Agreement as a special contract. Destek sought reconsideration of the State Commission's approval, arguing, <u>inter alia</u>, that the Agreement violated § 251(b) (describing the obligations of local exchange carriers not to impose discriminatory conditions on the resale of telecommunications)[14] and § 253(a)

---

[14]Section 251, entitled "Interconnection," imposes the general duty on telecommunications providers to interconnect by, <u>inter</u>

-13-

(prohibiting state and local regulations from creating barriers to entry) of the Act. The State Commission denied the motion for reconsideration. Destek then sought review of this case in the district court, claiming that the State Commission had made a "determination" for the purposes of § 252(e)(6). The district court correctly found this claim to be without merit. The record indicates that no determination approving or rejecting an interconnection agreement, pursuant to § 252, was made by the State Commission. The State Commission reviewed and approved the Agreement solely under New Hampshire state law. Accordingly, § 252(e)(6) cannot be the court's source of subject matter jurisdiction in this case.

Moreover, "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952); see also Pepperell Assocs. v. EPA, 246 F.3d 15, 27 (1st Cir. 2001) (holding

---

alia, not imposing unreasonable conditions on resale of telecommunications services. 47 U.S.C. § 251. Here, Destek argued that the approval of the special contract between the University of New Hampshire and Verizon (or for that matter any special contract) violated this duty to interconnect with Destek by imposing discriminatory conditions, in favor of the University of New Hampshire, on the resale of Verizon's telecommunications services. Destek did not argue to the State Commission that the Agreement was an interconnection agreement between the University of New Hampshire and Verizon.

that a claim not timely raised before an administrative agency could not be subject to judicial review).  The record indicates that Destek raised this issue for the first time before the district court.  In other words, Destek failed to timely present this issue before the State Commission, and thus deprived the State Commission of the opportunity to address the issue.  Subjecting the State Commission to federal court jurisdiction, in this case, would violate the State Commission's autonomy.  See, e.g., id. (noting that "this rule preserves judicial economy, agency autonomy, and accuracy of result by requiring full development of the issues in the administrative setting to obtain judicial review" (quoting N. Wind, Inc. v. Daley, 200 F.3d 13, 18 (1st Cir. 1999) (citations omitted) (internal quotation marks omitted))).

Accordingly, the district court correctly dismissed this claim because it was not properly before the court for judicial review.[15]

---

[15]Destek finds this result troubling because Destek believes this result means that "if the state commission approves such an agreement under State law, and fails to affirmatively find that it is, or is not, an interconnection agreement, that decision cannot be reviewed under the provisions of § 252(e)(6)."  Br. for the Appellant at 12.  This court does not share Destek's concerns because we do not believe that § 252(e)(6) is a mechanism to compel a state commission's application of the Telecommunications Act.  A claim that the State Commission violated federal law is distinct from a claim that the State Commission acted under federal-law authority, and only the latter claim is relevant to this case.

**B.**

Second, the district court found that Destek's claims against Verizon, under 42 U.S.C. § 1983, were without merit. We agree.[16]

Section 1983 allows plaintiffs to seek redress for "deprivation of any rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A critical element of any § 1983 claim is that the plaintiff show deprivation caused by a person acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia." Id.; Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 49 (1st Cir. 2000). As a result of this "color of state law" requirement, § 1983 rarely provides a cause of action against a private individual, "restrict[ing] § 1983 to 'state action.'" Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982)). Only when a private individual's conduct can be deemed "fairly attributable to the State" will a § 1983 cause of action exist against that individual. Lugar, 457 U.S. at 937; Gonzalez-Morales, 221 F.3d at 49.

---

[16]Because we hold that Destek's claims are barred on other grounds, we need not resolve whether Destek's allegations amount to a § 1983 claim.

-16-

Destek failed to show any conduct by Verizon that was fairly attributable to the State.[17]  See Gerena v. P.R. Legal Servs., Inc., 697 F.2d 447, 449 (1st Cir. 1983) ("The mere fact of government regulation does not convert the regulated entity into the government . . . ."). Accordingly, the district court properly granted summary judgment for Verizon on these claims.

_____

[17]In fact, Destek fails to challenge any actions taken by Verizon and instead only contests the State Commission's decision to approve the Agreement between Verizon and the University of New Hampshire, not Verizon's decision to contract with the University of New Hampshire.  The implication is that Destek would like us to attribute the actions of the State to a private actor for the purposes of § 1983 liability.  This situation requires us to step through a similar "analytical looking glass" as the Supreme Court stepped through in Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192-93 (1988) ("In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action.").  In Tarkanian, the Court concluded that a state university's adoption of the National Collegiate Athletic Association's ("NCAA") disciplinary procedures did not turn the NCAA's promulgation of those procedures into state action. Id. at 193-94.  Similarly, here, a state commission's approval of an agreement cannot turn a private individual's act of contracting into state action for the purposes of § 1983.

## C.

Third, the district court held that the State Commission and the Commissioners in their official capacities were immune from suit for damages under § 1983.[18]  We agree.[19]

Destek argues that the State Commission and the Commissioners waived their immunity by voluntarily participating in the regulatory scheme established by the Telecommunications Act. Whether a state waives its sovereign immunity by participating in the Act's regime is irrelevant to this issue because Destek seeks to impose liability pursuant to § 1983, not the Act.

"It is well settled beyond peradventure . . . that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action."  See Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).  Thus, Destek's claims against the State Commission and the Commissioners in their official capacity for damages are contrary to established law.

## D.

Finally, the district court held that Destek's claims for damages against the Commissioners in their individual capacities,

---

[18] As mentioned above, Destek voluntarily stipulated to the dismissal with prejudice of its § 1983 claim for prospective injunctive relief in order to appeal the district court's decision.

[19] See supra note 16.

pursuant to § 1983, were barred by the doctrine of "quasi-judicial" immunity. We agree.[20]

This court must take a functional approach to determining whether absolute immunity is appropriate for the Commissioners. See Forrester v. White, 484 U.S. 219, 224 (1988); Bettencourt, 904 F.2d at 782 (citing Scott v. Centr. Me. Power Co., 709 F. Supp. 1176, 1187 (D. Me. 1989) ("Even though by statute a state agency official at various times may perform legislative, executive and judicial functions, each of which may entitle the official to a different level of immunity, the functional approach to immunity requires that actions taken in the performance of a particular function are to be accorded the level of immunity appropriate to that function." (emphasis in original))). Absolute immunity is available to "certain 'quasi judicial' agency officials who, irrespective of their title, perform functions essentially similar to those of judges . . . in a setting similar to that of a court." Id. (citing Butz v. Economou, 438 U.S. 478, 511-17 (1977)) (emphasis in original). This is the doctrine of "quasi-judicial" immunity for members of adjudicatory bodies.

Accordingly, we must decide here whether the Commissioners have shown that while executing the activities which gave rise to this claim, namely denying Destek's motions for a hearing in the course of the evaluation of a contract under N.H.

---

[20]See supra note 16.

Rev. Stat. Ann. § 378:18, they were acting in an adjudicatory capacity such that the Commissioners are entitled to absolute immunity. This court laid out a three-part test to determine whether "quasi-judicial" immunity should attach to agency officials:

> First, [do the Commissioners], like . . . judge[s], perform a traditional "adjudicatory" function, in that [they] decide[] facts, appl[y] law, and otherwise resolve[] disputes on the merits (free from direct political influence)? Second, [do the Commissioners], like . . . judge[s], decide cases sufficiently controversial that, in the absence of absolute immunity, [they] would be subject to numerous damages actions? Third, [do the Commissioners], like . . . judge[s], adjudicate disputes against a backdrop of multiple safeguards designed to protect a [party's] constitutional rights?

Bettencourt, 904 F.2d at 783.

First, in determining whether a contract constitutes a special contract, pursuant to N.H. Rev. Stat. Ann. § 378:18, and denying an intervenor's motion for a hearing, the Commissioners perform tasks functionally comparable to judges: they review and decide facts, apply relevant law to those facts, resolve disputes, and issue written orders explaining their decisions. Second, the decisions whether to approve a special contract and whether to deny a competitor the right to a hearing regarding that contract are sufficiently controversial that, in the absence of absolute immunity, the Commissioners would be subject to numerous damages actions. Third, the rights of parties involved in approval of special contracts and requests for hearings regarding those

-20-

approvals are sufficiently protected by the extensive procedures set out for State Commission decisions. <u>See</u> N.H. Rev. Stat. Ann. §§ 365:1-35 (describing the State Commission's purpose, duties, and procedures); <u>see also</u> N.H. Code Admin. R. PUC 201.01-205.10 (2002).

We, therefore, conclude that under these circumstances, the Commissioners are entitled to absolute immunity in their "quasi-judicial" function and cannot be subjected to Destek's claim for damages in their individual capacity.[21]

## III.

For the aforementioned reasons, we **affirm** the judgment of the district court.

---

[21]This holding is limited to the Commissioners' role as adjudicators; to the extent that they perform legislative or executive functions, the level of immunity, if any, will vary.