**Margarita VIVES, et al., Plaintiff(s)**

v.

**Victor FAJARDO, Secretary of the Puerto Rico Department of Education, et al., Defendant(s).**

**No. 00–2496(JAG).**

United States District Court,
D. Puerto Rico.

Oct. 12, 2005.

Nora Vargas–Acosta, De Jesus, Hey & Vargas Law Office, San Juan, PR, for Plaintiffs.

Jose R. Cintron–Rodriguez, Litigation Division, Puerto Rico Electric Power Authority, Jo–Ann Estades–Boyer, Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiffs Margarita Vives and Nelson Trinidad, on their own behalf and on behalf of their son Salvador Trinidad Vives, (collectively, "Plaintiffs"), brought this action against the Puerto Rico Secretary of Education; Maria del Carmen Reyes ("Reyes"), Principal of the Rafael Colón Salgado Elementary School ("School"), María I. Rodríguez ("Rodríguez"), Social Worker at the School, and Tania Sabo ("Sabo"), Homeroom Special Education Teacher, in their personal and official capacities (collectively, "Defendants"), pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983, and supplemental state law causes of action.

Plaintiffs argue that the Defendants retaliated against them for exercising their rights under the Americans with Disabili-

ties Act, 42 U.S.C. §§ 12112–12117 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.* ("the Rehabilitation Act"). (Docket No. 1 ¶ 3).

Pending before the Court is Defendants' Motion for Summary Judgment. (Docket No. 69). The Defendants base their claim for *brevis* disposition on qualified immunity grounds, arguing that Plaintiffs have not proffered any evidence to sustain a retaliation claim. For the reasons set forth below, the Court **GRANTS** the Motion.

### FACTUAL BACKGROUND[1]

As mandated by First Circuit standards, the Court states the facts in the light most favorable to the party opposing summary judgment. *Acosta–Orozco v. Rodriguez–De–Rivera,* 132 F.3d 97, 98 (1997).

Salvador Trinidad–Vives ("Trinidad–Vives")is a twenty (20)year old man who was diagnosed with autism at age two.[2] For many years, Plaintiffs have complained to the DOE that the educational services Trinidad–Vives receives are not adequate, and that such inadequacy amounts to disability discrimination.

On March 29th, 1999, Plaintiffs filed a Discrimination Complaint Letter with the Office of the Civil Rights of the United States Department of Education ("OCR"). Plaintiffs alleged that their son had not received speech therapy services, as indicated and recommended in his Individualized Educational Program.

On June 15th, 1999, the OCR and the Puerto Rico Department of Education ("DOE") reached a Resolution Agreement ("Agreement"), whereby the DOE would provide Trinidad–Vives compensatory speech and language services, pursuant to the Rehabilitation Act. On September 27th, 1999, Plaintiffs complained to the OCR that the DOE had violated the Agreement and sought assistance from OCR to enforce its terms. Plaintiffs sustain that filing a complaint with the OCR constitutes protected activity under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Plaintiffs further claim that, as a result of their resorting to the OCR, the DOE allegedly unleashed a pattern of retaliation against them through Reyes, Rodriguez, and Sabo. The alleged retaliatory actions included: limited access to their son's educational records, ignored requests for information, restricted access to school premises, threats to file defamation suits, harassment and intimidation of the parents, and threats to report the parents to the state welfare agency. (Docket No. 1 at 5).

On November 29th, 1999, Defendants brought the Plaintiffs before the Puerto Rico Department of Family Affairs(DOF), reporting that plaintiffs Trinidad and Vives were being negligent in attending to the special needs of their son Trinidad–Vives, and were not responsive to the Defendants' complaints regarding Trinidad–Vives' hygiene and attitude. Plaintiffs, nonetheless, counter that this event was yet another episode of Defendants' retaliatory agenda.

On November 27th, 2000, Plaintiffs filed the present Complaint. (Docket No. 1). On February 18th, 2005, the Defendants filed a Motion for Summary Judgment, based on qualified immunity grounds. (Docket No. 69).

1. The Court extracts the relevant facts from the Plaintiffs' Complaint (Docket No. 1), and Response in Opposition to Motion for Summary Judgment (Dockets No. 80 and 81).

2. At the time of filing the present Complaint, Trinidad–Vives was sixteen (16) years old. (Docket No. 1 ¶ 14).

## 54

## STANDARD OF REVIEW

### A. Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

■ In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a "properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

■ Unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. However, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences or unsupportable speculation. *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990); *Santa Carrasquillo v. Rey Hernández,* 2005 WL 2206449, *2 to *3 (D.P.R. Sept. 9, 2005)

### 2. Section 1983 Standard

■ 42 U.S.C. § 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right. *Omni Behavioral Health v. Miller,* 285 F.3d 646, 650–51 (8th Cir.2002); *see also Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 621 (1st Cir.2000). Section 1983 does

not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Commission*, 318 F.3d 32, 39 (1st Cir.2003); *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001).

■ Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989). There are two aspects to the second inquiry: 1) there must have been a deprivation of federally protected rights, privileges and immunities, and 2) the conduct complained of must have been causally connected to the deprivation. *Id.* Hence, to succeed in a Section 1983 action, Plaintiffs must prove that Defendants' actions were a cause in fact or a proximate cause of their injury. *See Collins v. City Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■■ Under Section 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir.1977). Personal involvement requires a showing of a causal connection or affirmative link between the specific defendant and plaintiff's federal rights deprivation. *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902 (1st Cir.1988); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985). This may consist of direct acts by the defendant, certain acts performed at defendant's direction, or knowledge and consent. *Rodríguez–Vázquez v. Cintrón–Rodríguez*, 160

F.Supp.2d 204, 209 (D.P.R.2001). Each defendant individually responds for his own acts and omissions in the light of his own duties. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In other words, as there is no *respondeat superior* liability under Section 1983, liability in damages can only be imposed upon officials who were personally involved in the deprivation of constitutional rights. *Lipsett*, 864 F.2d at 901–902.

### 3. *Qualified Immunity*

■ Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit employs a three-prong test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004)(*citing Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 90 (1st Cir.2002); *Harlow*, 457 U.S. at 818–819, 102 S.Ct. 2727).

### DISCUSSION

Plaintiffs argue that, as a consequence of their filing a complaint against the DOE before the OCR, the DOE, through defendants Reyes, Rodriguez and Sabo, "initiated a well orchestrated pattern of retalia-

tory acts against them." (Docket No. 80 at 2). Plaintiffs contend that the retaliation consisted of, but was not limited to, the deprivation of services essential to Trinidad–Vives' education, namely: speech therapy, transportation and proper implementation of his Individual Educational Program ("IEP"); restriction to Plaintiffs' access to the school premises; denial of access to their son's records; and filing a complaint against Plaintiffs before the DOE.

Defendants counter that they have no reason to retaliate against Plaintiffs for their resorting to the OCR, inasmuch as that claim was not brought against them personally, but against the DOE for its failure to comply with providing Trinidad–Vives compensatory speech and language services, pursuant to the Agreement. Defendants further allege that none of them have anything to do with such speech therapy and language services. Additionally, the Defendants contend that their filing a complaint with the DOE was justified, in light of Plaintiffs' recorded negligence in responding to the Defendants' multiple reports regarding Trinidad–Vives' health and attitude. The Court agrees.

The evidence before the Court shows that the DOE might not be fully complying with its duties under the Agreement, and that the Plaintiffs and the Defendants often disagree as to the proper way to satisfy Trinidad–Vives' special needs.[3] (Dockets No. 83, 84, 85 and 96) Moreover, the depositions and documents before the Court show that the relation between the parties sometimes turned hostile. *Id.* Plaintiffs, however, fail to prove that such misunderstandings were connected to a Defendants' retaliatory animus because of the Plaintiffs seeking assistance from the OCR.

For instance, the record is devoid of evidence of the Defendants expressing or implying anger, fear or discomfort by the Plaintiffs' going to the OCR, or proof of the Defendants expressing or implying to anyone that they wanted to go after the plaintiffs *because of* their filing a complaint before the OCR. Moreover, Plaintiffs did not rebut Defendants' assertion that "none of the defendants have anything to do with the speech therapy that the Department of Education owed to Salvador Trinidad," and which prompted the Plaintiffs' recourse to the OCR. (Docket No. 69 at 9).

It is undisputed that Plaintiffs' claim with the OCR was not against the individual Defendants, but against the DOE; hence, Plaintiffs also fail to identify against which specific protected activity were the Defendants retaliating. Plaintiffs cannot rely on an alleged malfeasance by the DOE to sustain a Section 1983 claim against the individual Defendants in the absence of a personal involvement by such plaintiffs in the alleged wrongs. Simply stated, liability cannot be predicated solely in the operation of *respondeat superior.* *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

Finally, Plaintiffs also fail to prove that the Defendants' complaint before the DOF was in retaliation for their resorting to the OCR. Defendants, conversely, presented ample evidence supporting their claim of Plaintiffs being negligent in attending to Trinidad–Vives' needs. For instance, the record shows that Trinidad–Vives was brought to school with diarrhea, and that

---

**3.** The correspondence between the parties shows that Defendants tried to be conciliatory with the Plaintiffs, and made efforts to include Trinidad–Vives in as many school activities as possible. However, the parties disagreed on various matters, namely, parental participation in field trips and other school-sponsored activities, and the proper way to tender to Trinidad–Vives' medical needs. (Docket No. 96, Exhibit 3)

defendant Sabo brought this to the attention of plaintiff Margarita Vives. Plaintiffs, nonetheless, besides providing Sabo with cleansers, towels and disinfectants, did nothing to correct the underlying problem. (Docket No. 96, Exibit # 3). Furthermore, the record shows that Plaintiffs did not cooperate with the Defendants in taking care of Trinidad–Vives' medical needs, and were non-responsive to multiple telephone calls by Defendants regarding Trinidad–Vives' aggressive attitude.[4] *Id.*

In sum, the gist of the present Complaint is that the DOE, *through* the Defendants, retaliated against the Plaintiffs for their exercising their rights pursuant to the ADA and the Rehabilitation Act. Plaintiffs, however, merely conclude that Defendants retaliated against them, but furnish no material admissible evidence to sustain their claim. It is well settled law that, when entertaining a motion for summary judgment, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

A deferential review of the record shows that Plaintiffs only prove that the parties often clashed about the proper way to handle Trinidad–Vives' special needs, and that their relation was tense at times. However, the challenged actions do not amount to an unconstitutional retaliation actionable under Section 1983. The Court hence rules that Reyes, Rodriguez and Sabo are entitled to qualified immunity and, accordingly, all claims against them must be dismissed.[5]

### CONCLUSION

In light of the foregoing the Court rules that defendants Reyes, Rodriguez and Sabo are entitled to qualified immunity, and thus **GRANTS** the Defendants' Motion for Summary Judgment. (Docket No. 69). The case is hereby **DISMISSED.**

IT IS SO ORDERED.

---

4. The Court notes that according to the Puerto Rico Law for the Well-being and Integral Protection of Childhood, 8 L.P.R.A. § 444 *et seq.*, public employees have a duty to inform suspected acts of abuse or negligence. Article 21 of said statute, 8 L.P.R.A. § 446, provides, in pertinent part:

   Article 21–Duty to Inform

   The following are obliged to immediately inform in those cases where a situation of abuse, institutional abuse, negligence and/or institutional negligence against a minor exists or may be suspected to exist:

   (a) Professionals or public employees, public entities, private and privatized that, in their professional capacity and in performance of their duties, might have knowledge or suspicion that a minor is, or has been, under a risk of being a victim of child abuse, institutional abuse, negligence and/or institutional negligence; health professionals, and of the justice system, of education, social workers, or the public order, persons dedicated to direct labor or work in institutions or day care centers that offer child care services ...; (translation ours).

5. The Secretary of the DOE is a co-Defendant in the case at bar. Inasmuch as no particular claim is made as to the Secretary, the Court **DISMISSES** all claims against him.