Cruz **MARTINEZ–RIVERA,**
et al., **Plaintiff(s)**

v.

Roberto **SANCHEZ RAMOS,**
et al., **Defendant(s).**

Civil No. 05–2146 (JAG).

United States District Court,
D. Puerto Rico.

May 4, 2006.

48

Edwin Prado–Galarza, Prado, Nunez & Associates, PSC, San Juan, PR, for Plaintiffs.

Francisco A. Ojeda–Diez, Maria Judith Surillo, Federal Litigation, P.R. Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a Motion to Dismiss filed by defendants on March 7th, 2006. (Docket No. 19). For the reasons discussed below, the Courts **GRANTS** the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 28th, 2004, Luis Cepeda Martinez ("Cepeda Martinez") was on the seventh floor of the Torre Sabana Housing Project when, between 5:00 and 6:00 a.m., the Puerto Rico Police conducted a raid on the premises. Plaintiffs allege that, as Cepeda Martinez walked towards his mother's apartment, the cops instructed him to stop and, without provocation or reason, shot him to death. The Puerto Rico Police Department reported that Cepeda Martinez had been shooting at the agents; nevertheless, no weapon was ever recovered. Plaintiffs contend that defendants Antonio Martinez and Enrique Bencebi—sergeant and police officer, respectively—along with other unidentified police officers, were among those who participated in the raid in question. Plaintiffs, however, fail to identify the agent(s) who shot Cepeda Martinez.

On October 28th, 2005, Cepeda Martinez's parents, siblings and children (a son and a daughter, represented by their respective mothers) filed the present complaint pursuant to 42 U.S.C. § 1983, alleging that defendants' actions violated their

rights under the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution, and several state laws. (Docket No. 1). On January 18th, 2006, plaintiffs filed an Amended Complaint, on the same grounds, against the following defendants: 1) Roberto Sanchez–Ramos, in his personal and official capacity as Secretary of the Puerto Rico Department of Justice; 2)Pedro Toledo, in his personal and official capacity as Superintendent of the Puerto Rico Police; 3) Sergeant Antonio Martinez, in his personal and official capacity as an agent of the Carolina Drug Unit of the Puerto Rico Police; 4) Enrique Bencebi, in his personal and official capacities as an agent of the Carolina Drug Unit of the Puerto Rico Police; and 5)John Doe and Jane Doe, as "potential defendants and officers who may have contributed to the wrongful death and violation of the rights of Luis Cepeda Martinez." (Docket No. 15 at 2–3).

On March 7th, 2006, defendants moved to dismiss the Amended Complaint arguing that: 1) the Eleventh Amendment bars the official capacity claims, 2) plaintiffs fail to state a cause of action, as they fail to show a causal connection between their federal rights deprivation and defendants' actions, and 3) plaintiffs lack standing to sue under 42 U.S.C. § 1983. (Docket No. 19). On March 27th, 2006, defendants requested that the Motion to Dismiss be adjudicated as unopposed, due to plaintiffs' failure to respond to it within the ten day period prescribed by the Local Rules of this District.[2] On that same date, plaintiffs requested an extension of time to file an opposition to defendants' motion. (Docket No. 21). The Court, nevertheless, denied plaintiffs' request, as the reasons set forth for their non-compliance were not satisfactory.

---

1. The Court takes the relevant facts from the Amended Complaint. (Docket No. 15).

2. The ten day period elapsed on March 24th, 2006.

A Second Amended Complaint was filed on April 3rd, 2006, (Docket No. 27), through which plaintiffs replaced defendant Pedro Toledo with Agustin Cartagena, dismissed all claims against the Secretary of Justice Roberto Sanchez Ramos, and dismissed all claims brought pursuant to the Fifth, Eight and Ninth Amendments. Plaintiffs also dropped all claims brought against the Puerto Rico Police Superintendent in his official capacity.

Pursuant to Local Rule 7.1(b),[3] the Court **GRANTS** the defendants' request to adjudicate the motion as unopposed, and proceeds to examine the sufficiency of plaintiffs' complaint. *See Pomerleau v. West Springfield Public Schools*, 362 F.3d 143, 145 (1st Cir.2004)(holding that "the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim"); *Vega–Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir.2003).[4] In doing so, the Court will employ a Fed.R.Civ.P. 12(b)(6) standard.

## STANDARD OF REVIEW

Pursuant to Fed. R.Civ.P. Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not

credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

A perusal of the Amended Complaint reveals that plaintiffs' allegations are twofold. First, there is a wrongful death claim in which plaintiffs seek to recover for the damages *they* allegedly suffered as a result of defendants' actions against Cepeda Martinez. On this claim, plaintiffs must prove that they, not Cepeda Martinez, have a section 1983 cause of action. In addition, there is a claim brought on behalf of the decedent to recover for the damages inflicted upon him by the defendants. The Court will evaluate each claim separately.

### 1. *Plaintiffs' Section 1983 Claim*

 It is well known that section 1983 does not confer substantive rights, but

---

**3.** Rule 7.1(b) states, in pertinent part, that "[u]nless within ten (10) days after the service of a motion the opposing party files a written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection."

**4.** Notwithstanding, the First Circuit has warned that "where a local rule expressly requires a response to a motion, the non-moving party is placed on notice that failure to respond could result in a procedural default." *Pomerleau*, 362 F.3d at 145.

provides a venue for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Commission*, 318 F.3d 32, 39 (1st Cir.2003); *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001). Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution of the United States. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989). There are two aspects to the second inquiry: 1) there must have been a deprivation of federally protected rights, privileges and immunities, and 2) the conduct complained of must have been causally connected to the deprivation. *Id.* Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants' actions were a cause in fact or a proximate cause of their injury. *See Collins v. City Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Vives v. Fajardo*, 399 F.Supp.2d 50, 55 (D.P.R. 2005).

In the case at bar, it is beyond debate that the actions complained of were committed by people acting under color of state law. Plaintiffs, however, fail to clearly state which federally protected rights they were deprived of by defendants' actions. The Amended Complaint states that "[a] s a direct and proximate result of the acts described herein, the plaintiffs lost the company and affection of their brother, son and father and their liberty to enjoy such companionship," which has caused them "extreme emotional anguish, as well as physical and mental sufferings." (Docket No. 27 at ¶ 26). The Amended Complaint further states that plaintiffs have suffered economic hardship due to their dependence on the decedent's income. *Id.* Plaintiffs argue that all this amounts to a violation of their due process rights under the Fourth and Fourteenth Amendments. (Docket No. 27 at ¶ 29). The Court disagrees.

■ It is well settled that not every state tort constitutes a violation of a protected federal right simply because it is committed by the state. *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.1991). In *Valdivieso v. Robles*, 807 F.2d 6, 9(1st Cir.1986), the First Circuit established that the stepfather and siblings of an adult inmate who was beaten to death by state guards, did not have a constitutionally protected liberty interest in companionship of their adult son and brother, such as would permit them to recover under section 1983. The Court explained that "[t]he Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child," and that a "governmental action that affects the parental relationship only incidentally—as in this case—is not susceptible to challenge for a violation of due process." *Valdivieso*, 807 F.2d at 8. Moreover, the First Circuit declared that "the problem of giving definition and limits to a liberty interest in this vast area seems not only exceedingly difficult but to a considerable extent duplicative of the widespread existence of state causes of action," that provide for compensation to grieving relatives. *Id.*, at 9. Hence, under First Circuit standards, in order to establish a violation of a right to familial associational privacy, the state action must be directly aimed at the parent-child relationship. *Robles Vazquez v. Garcia*, 110 F.3d 204, 206 n. 4 (1st Cir.1997) *Pittsley*, 927 F.2d at 7; *Valdivieso*, 807 F.2d at 8.

■ A review of the Amended Complaint shows that no such allegation is made here. Plaintiffs only argue that the defendants' actions have caused them extreme sorrow, lost companionship, and economic hardship. (Docket No. 27 at ¶ 26). This, however, is simply not enough to support a section 1983 cause of action. Inasmuch as plaintiffs do not establish a violation of any constitutionally recognized right, *their* section 1983 claims must fail.

### 2. Section 1983 Claims on Behalf of the Deceased

The First Circuit has consistently allowed section 1983 claims brought by the estate of the deceased, on his or her behalf, when the defendants' unconstitutional conduct was the proximate cause of death. *See e.g. Alsina–Ortiz v. Laboy*, 400 F.3d 77 (1st Cir.2005). However, in order to survive the defendants' motion to dismiss, plaintiffs must plead sufficient facts to establish the type of personal involvement by the defendants required for a section 1983 claim to succeed.

The Amended Complaint states, in pertinent part, that:

17. Defendants Antonio Martínez and Enrique Bencebi, Sergeant and police officer, respectively, along with other fellow officers, were among the officers who conducted the raid at Torre Sabana on October 28, 2004. One of the officers involved in the raid shot one or more of the bullets that proximately resulted in the death of Luis C. Cepeda Martinez.

. . .

20. Defendant, Superintendent of the Police Department, Agustin Cartagena, and Sergeant Antonio Martínez and the defendant represented by the fictitious name of Richard Roe were also in charge of the raid which took place on October 28, 2004 at the Torre Sabana Public Housing Project. As such, they were responsible for the instructions given to shoot Mr. Cepeda Martinez, for their use of weaponry by officers, and for monitoring the actions and controlling the conduct of the officers in the raid.

21. Defendant Officers Enrique Bencebi and Joe Doe acted with gross negligence and reckless indifference in the exercise of their responsibilities, and in deliberate disregard to the rights of the citizens of Torre Sabana in general and Luis C. Cepeda in particular.

22. The defendants represented by the fictitious name Richard Roe and Peter Poe were at all times relevant to this complaint, police officers and/or civilian employees of the Commonwealth Police Department who were charged with the responsibility of supervising the actions of officers Enrique Bencebi and John Doe. Supervisory officers, including but not limited to the Secretary of Justice, Roberto Sanchez Ramos, were responsible for the performance of their subordinate police officers, and assuring that their ongoing training was adequate, as well as disciplining and monitoring them.

23. In the exercise of these duties, defendants, Richard Roe and Peter Poe knew of should have known and identified the dangerous tendencies of police officers John Doe and Enrique Bencebi, and the threat they represented to citizens in Puerto Rico. They also knew that these police officers had received inadequate and deficient training with respect to the carrying out of their duties. They failed to properly track, monitor, supervise, and/or evaluate and discipline these defendants or to take any steps to prevent or correct these dangerous deficiencies or to assure that they would not hurt citizens through the use of their official authority, thereby

proximately causing the death of the plaintiffs' decedent. (Docket No. 27 at 6–7).

The Court gleans from the foregoing that defendant Enrique Bencebi is charged with participating in the raid in question, and with conducting his official duties with gross negligence and reckless indifference. On the other hand, defendants Agustin Cartagena, Antonio Martinez and those depicted as Richard Roe and Peter Poe, are charged with being the supervisors of the agents who conducted the raid. Conspicuously absent from the complaint, however, is the identity of the agent who shot Cepeda Martinez. Furthermore, the complaint fails to link the defendants to any specific wrongful act against the decedent. Under First Circuit standards, these allegations are insufficient to support a section 1983 cause of action.

■■ First, the fact that an officer is present at the site of the incident does not automatically demonstrate that he or she was personally involved. *See Ramos Bonilla v. Vivoni,* 259 F.Supp.2d 135, 143 (D.P.R.2003). Hence, merely alleging that defendant Bencebi was "among the officers who conducted the raid", and that he was "grossly negligent," without more, is not sufficient to establish an involvement of the kind required by section 1983. Consequently, all section 1983 claims brought against Bencebi shall be **DISMISSED.**

■ As to the supervisory liability claims, the First Circuit has consistently held that there is no section 1983 liability on the basis of *respondeat superior* and, thus, "a supervisor may be found liable only on the basis of his own acts or omissions." *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91–92 (1st Cir.1994); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902 (1st Cir.1988). A state official sued under section 1983 can be held liable for the behavior of his subordinates

if: (1) the behavior of such subordinates results in a constitutional violation and (2) the official's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as "supervisory encouragement, condonation or acquiescence." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998). In other words, the causation requirement must show that the supervisor's conduct "led inexorably to the constitutional violation." *Hegarty v. Somerset County,* 53 F.3d 1367, 1380 (1st Cir.1995).

■ In the present case, plaintiffs' allegations do not meet this standard. That is, plaintiffs have not showed that defendants Agustin Cartagena, Antonio Martinez and those depicted as Richard Roe and Peter Poe, formulated a policy or engaged in a practice that led to the alleged civil rights violations. Plaintiffs have also failed to show that the defendants' actions served as an encouragement or approval of their subordinates' alleged bad acts. Plaintiffs' allegations only establish that Cartagena, Martinez, Roe and Poe were the supervisors of the agents who conducted the raid. Nonetheless, "merely establishing the existence of an employment relationship between a supervisor and a subordinate is not enough to establish supervisory liability." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Thus, all section 1983 claims brought against defendants Cartagena, Martinez, Roe and Poe shall also be **DISMISSED.**

In sum, although at this stage the Court must view the facts in the light most favorable to the non-moving party, plaintiffs, nonetheless, must put "their best foot forward in an effort to present a legal theory that will support their claim." *McCoy,* 950

F.2d at 23. The present complaint is grounded on the essential allegation that a series of unconstitutional actions by defendants led to the death of Luis Cepeda Martinez. Yet, plaintiffs cannot point to a specific wrongful act by defendants that caused or contributed to that result. Simply stating that defendants were grossly negligent while conducting the raid is not enough.

### CONCLUSION

In light of the foregoing, the Court **GRANTS** the defendants' Motion to Dismiss. All section 1983 claims brought by plaintiffs are **DISMISSED** with prejudice. Supplemental state law claims are **DISMISSED** without prejudice. Judgment shall enter accordingly.

IT IS SO ORDERED.